**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:15CV-00838-JHM**

**JOE MUELLER**                                                                      **PLAINTIFF**

**V.**

**84 LUMBER COMPANY, LIMITED PARTNERSHIP**                    **DEFENDANT/**
                                                                          **THIRD-PARTY PLAINTIFF**

**V.**

**BLS TRUCKING, INC.**                                        **THIRD-PARTY DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, 84 Lumber Company, Limited Partnership, for summary judgment against Plaintiff Joe Mueller [DN 20]. Fully briefed, this matter is ripe for decision.

## I.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some

"metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.  It is against this standard the Court reviews the following facts.

## II.  BACKGROUND

On October 17, 2014, Plaintiff, Joe Mueller, sustained an injury while on the business premises of 84 Lumber at the Dixie Highway location in Louisville, Kentucky.  Defendant 84 Lumber Company is a retailer of building materials and goods.  Plaintiff was at the 84 Lumber Dixie Highway store to pick up a shipment for delivery.  While Plaintiff was walking toward his delivery truck to verify the contents of his third load of the day, he tripped over a piece of metal and fell.  Plaintiff sustained injuries to his right arm/shoulder, knee, and ankle.  At the time of the accident, Plaintiff was employed by BLS Trucking, Inc., as truck driver/delivery person.  BLS Trucking contracted to provide pick-up/delivery services for 84 Lumber.  Mitchell D. Feldman, Director of Delivery, Special Purchasing and Government Sales at 84 Lumber, testified that the subject pick-up/delivery occurred under the terms of this contract.

Following his injury, Plaintiff pursued a workers' compensation claim against his employer, BLS Trucking.  Plaintiff testified that he was acting within the course of his employment with BLS Trucking when he sustained his injuries.  BLS Trucking secured the

payment of workers' compensation for Plaintiff as part of his employment with that company for the injuries sustained as a result of the accident.

In October of 2015, Plaintiff filed suit against 84 Lumber in Jefferson Circuit Court alleging that "Defendant was negligent in that Defendant failed to properly maintain their property as to allowing dangerous and negligent conditions which caused the plaintiff to fall." (Complaint at ¶ 8.)   Defendant filed responsive pleadings denying liability for the injuries sustained by the Plaintiff.   In addition, Defendant affirmatively pleaded that Plaintiff's claims are barred by the exclusive remedy sections of the Kentucky Workers' Compensation Act, essentially arguing that it is a "statutory employer" within the provisions and definitions in KRS § 342.610 and KRS § 342.690.   On November 16, 2015, Defendant removed the action to federal court.   The Court entered a scheduling order allowing for discovery related solely to the workers' compensation exclusive remedy defense to be completed no later than June 1, 2016, and ordering dispositive motions related to this issue to be filed no later than August 1, 2016.   Defendant now moves for summary judgment on this threshold issue.

### III. DISCUSSION

The question before the Court is whether the Defendant is a statutory employer within the express provisions of the Kentucky Workers' Compensation statute.   KRS §342.690(1) provides that if an employer secures payment of workers' compensation under Chapter 342, "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer . . . ."   For purposes of this section, "the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation."   Granus v. North American Philips Lighting Corp., 821 F.2d 1253, 1257 (6th Cir. 1987).   KRS § 342.610(2)(b) defines a "contractor" as "[a] person who

3

contracts with another. . . [t]o have work performed of a kind which is a regular or recurrent part of the work of" that person's "trade, business, occupation, or profession." KRS § 342.610(2)(b). "If a premises owner qualifies as a contractor under this provision, then it is 'deemed to be the statutory, or 'up-the-ladder,' employer[ ] of individuals who are injured while working on' the premises." Dunn v. Corning, Inc., 575 Fed. Appx. 644, 646 (6th Cir. 2014)(quoting General Elec. Co. v. Cain, 236 S.W.3d 579, 585 (Ky. 2007)).

The purpose of KRS 342.610(2)(b) "is not to shield owners or contractors from potential tort liability but to assure that contractors and subcontractors provide workers' compensation coverage." Cain, 236 S.W.3d at 587. "An injured employee's 'immediate employer[ ]' ordinarily provides workers' compensation benefits in exchange for which it gets immunity from tort lawsuits." Black v. Dixie Consumer Products LLC, 2016 WL 4501680, *4 (6th Cir. Aug. 29, 2016)(quoting Cain, 236 S.W.3d at 585).   When the immediate employer fails to provide workers' compensation, "the contractor, 'like any other employer[ ],' is on the hook for workers' compensation but gains statutory immunity if 'the worker was injured while performing work that was 'of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession.'" Black, 2016 WL 4501680, *4 (quotation omitted).

In Black v. Dixie, the Sixth Circuit explained that in determining whether an owner or contractor possessed immunity from suit under the Kentucky Workers' Compensation Act, the Court must engage in a three-part inquiry.  First, was BLS Trucking "hired to perform" this work for 84 Lumber?  Black, 2016 WL 4501680, *4 (citing Cain, 236 S.W.3d at 588).  Second, was Mueller's work for 84 Lumber "a 'customary, usual, or normal' part of [84 Lumber's] business or 'work that [84 Lumber] repeats with some degree of regularity'?" Black, 2016 WL 4501680, *4 (quoting Black v. Dixie Consumer Products LLC, 516 Fed. Appx. 412, 417 (6th Cir. 2013)).

4

Third, was the work by Mueller "work that [84 Lumber] or similar businesses would normally perform or be expected to perform with employees"? Id.

Here, 84 Lumber meets each requirement.  First, 84 Lumber hired BLS Trucking to pick up and deliver goods such as construction materials including framing, drywall, insulation, roofing, siding, trim and cabinetry, windows, and doors purchased by customers from its retail locations in Versailles, Lexington, Georgetown, Bardstown, Pioneer Village, Valley Station, Radcliff, and Louisville, Kentucky and Jeffersonville, Indiana.

Second, the pick-up and delivery of construction materials and other goods for 84 Lumber "is a 'customary, usual, or normal' part of [84 Lumber's] business or 'work that [84 Lumber] repeats with some degree of regularity.'" Black, 2016 WL 4501680, *4 (quotation omitted). "The relevant work is the 'work being performed at the time of the injury.'" Id. (quoting Estate of Dohoney ex rel. Dohoney v. Int'l Paper Co., 560 Fed. Appx. 564, 569 (6th Cir. 2014). The question is whether the pick-up of construction materials and goods at 84 Lumber for delivery to customers "occurred on a regular or recurrent basis." Black, 2016 WL 4501680, *4.  Just as in Black, the answer is straightforward, as 84 Lumber operates 260 retail sales locations in the United States with approximately two-thirds of all purchases from 84 Lumber being delivered sales to customers.   In fact, Plaintiff's own testimony establishes that building materials were delivered to customers of 84 Lumbar with some degree of regularity.  Plaintiff testified that he performed those delivery services working five to six days a week and delivering an average of three to five truckloads of building materials to customers daily.

Third, the picking up and delivery of goods purchased by 84 Lumber customers amounts to "work that [84 Lumber] or similar businesses would normally perform or be expected to perform with employees." Black, 2016 WL 4501680, *4.  Mitchell D. Feldman, Director of

Delivery, Special Purchasing and Government Sales at 84 Lumber, averred that 84 Lumber provides for delivery of goods purchased by its customers from its retail stores either with 84 Lumber employees or by sub-contracting such delivery services to others. (Mitchell Feldman Aff. ¶¶ 3-4.)  In fact, the trucks used to make the deliveries carry the logo of 84 Lumber, Plaintiff wore clothing that bore the 84 Lumber logo, and no deliveries were made for any other company other than 84 Lumber. Additionally, Defendant would charge customers for delivery of the materials which it then contracted with BLS to perform. Feldman states that in the past 84 Lumber has directly hired commercial drivers to make deliveries of items that required the use of commercial drivers or vehicles with a gross vehicle weight of over 26,000 pounds. (Id. at ¶ 5.) In 1978, 84 Lumber began to subcontract the transportation of these goods and materials requiring the use of commercial drivers.  (Id. at ¶ 6.)  Furthermore, Feldman testified that he is familiar with the delivery practices of competitors such as Builders First Source/Pro Build, BMC West and Carter Lumbar, and the competitors and similar businesses provide for delivery of goods purchased by customers with their own employees as opposed to sub-contractors. (Id. at ¶7.)  Plaintiff provides no evidence to the contrary.

Contrary to Plaintiff's argument, the fact that Defendant decided to contract out certain deliveries of building materials and goods to its customers in 1978 does not disqualify such job from being considered a regular and recurrent part of 84 Lumber's business.  In fact, "[e]ven though [a Defendant] may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." Fireman's Fund Ins. Co. v. Sherman & Fletcher, 705 S.W.2d 459, 462 (Ky. 1986); see also Black, 2016 WL 4501680, *4.  Thus, the fact that a defendant did not ordinarily perform the

work itself, but usually subcontracted the work to others is a "distinction . . . of no significance" under the statutes.  Granus, 821 F.2d at 1257.

Finally, the Court rejects the Plaintiff's argument that it would be premature for the Court to grant summary judgment at this point.  The scheduling order clearly provided for discovery and dispositive motion deadlines related to this issue. [DN 9].  Those deadlines have now passed.

### IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant for summary judgment [DN 20] is **GRANTED**.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 6, 2016